# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGIE DELGADO, | 1:06cv1774 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Angie Delgado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on July 17, 2003, alleging disability since September 25, 2002, due to bipolar depression, mental illness and seizures. AR 54-56, 64-70. After being

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On February 7, 2007, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 27, 43-48, 49. On April 24, 2006, ALJ Bert Hoffman held a hearing. AR 269-297. ALJ Hoffman denied benefits on June 27, 2006. AR 11-18. The Appeals Council denied review on October 11, 2006. AR 5-8.

<u>Hearing Testimony</u>

ALJ Hoffman held a hearing on April 24, 2006, in Fresno, California. Plaintiff appeared with her attorney, Robert Christenson. Plaintiff's mother, Sandra Delgado, also appeared and testified. AR 269.

Plaintiff testified that she was 26 years old at the time of the hearing and completed the ninth grade in special education. AR 272-273. She has trouble reading and writing "big words" but can read the newspaper and write a letter. AR 273. Plaintiff has six children, ages seven, six, five, three, two and one and a half. AR 274. She worked part-time as a cashier at Burger King for less than six months. She testified that her job ended because of her headaches and seizures, and because she "moved back." AR 274-275.

She testified that she gets headaches about twice a week and that they usually last for about an hour. She does not know what causes them and takes medication to make them go away. AR 275-276. She also takes medication for seizures. AR 276. Plaintiff explained that she gets sick and vomits twice a day, every two or three days. AR 278. Other than headaches and seizures, Plaintiff's only other problem was a learning disability during school. AR 279.

Plaintiff explained that her mother lives across the street and comes over to help with her children when she gets headaches. AR 279. During the day, she stays home with her children, reads to them, watches movies, takes them to the park, and feeds them. She does laundry twice a week. She does not drive but sometimes takes the bus. AR 280. Plaintiff believed she could take care of her children except when she had headaches. AR 286.

Plaintiff's mother, Sandra Delgado, testified that she lives across the street from Plaintiff. Plaintiff is able to take care of her six children, but needs help when she gets headaches. AR 290. Plaintiff gets headaches about twice a week, and they last for two to four hours at a time. AR 291. Ms. Delgado further testified that Plaintiff had a learning disability and was in special

education classes. Ms. Delgado testified that there are times when she sees evidence of her learning disability. AR 291. Plaintiff has problems with depression and anxiety only when she has headaches. AR 292.

Ms. Delgado testified that Plaintiff takes medication for her seizures and has seizures about twice a week. She makes sure that Plaintiff takes her medication as directed. AR 294.

Medical Record

Blood testing performed on April 30, 2003, revealed that Plaintiff's Dilantin levels were out of range. AR 130.

On March 2, 2004, Plaintiff underwent a psychological evaluation performed by Leslie H. Lessenger, Ph.D. Plaintiff reported the she had her first seizure in September 2003. Her report of subsequent seizures was inconsistent. Plaintiff reported that her depression started in 1992. She last worked in 1996, when she was discharged from the group home where she was living. Plaintiff was hospitalized in 1992 and has been prescribed Trazadone, Xanax and Depakote. She has also received mental health counseling. Plaintiff lived with her five children and a cousin, but her mother visited everyday. She cooks, cleans, does laundry and goes shopping with her mother. Her mother handles her money from AFDC. Plaintiff reported experiencing domestic violence with the father of two of her children. She drank heavily from 12 to 13 and started using methamphetamine at the same age, last using at age 15. She was raised by her mother until age 12, when she was placed in Juvenile Hall for truancy. She lived in a group home and then Advent Group Youth Ministry until age 18. She was in an independent living program until she became pregnant with her first child and has lived with her mother since February 1998. AR 185-186. Plaintiff completed ninth grade and received special education services for speech. AR 187.

Upon mental status examination, Plaintiff was oriented to person, time, place and the nature of her situation. Speech was coherent, with appropriate and logical content and good productivity. Expression of affect was full in range and congruent with content. Plaintiff was cooperative and appeared to put forth full effort on all tasks. AR 187. Testing revealed a level of intellectual functioning in the extremely low to borderline range (Verbal IQ = 60; Performance

IQ = 75; Full Scale IQ = 67). On the Wechsler Memory Scale, she scored in the low average to average range. On the Bender Gestalt, she committed four errors, which was borderline for brain dysfunction. AR 187. She reads at the fourth grade level and performs math at the third grade level.

Dr. Lessenger diagnosed depressive disorder, not otherwise specified and borderline intellectual functioning. Her GAF was 65. She presented symptoms of mild depression and anxiety. Dr. Lessenger found no restrictions in activities of daily living or in maintaining social functioning. She had difficulties of concentration, persistence and pace that were consistent with borderline intellectual functioning. Her ability to understand, carry out and remember simple instructions was also consistent with borderline intellectual functioning. AR 188.

On March 27, 2004, Plaintiff saw Michael S. Barnett, M.D., for a psychiatric evaluation. AR 197. Plaintiff had a mild speech impediment, but was not difficult to understand. Plaintiff reported that she has headaches and dizziness and worries about her children daily. Upon examination, Plaintiff was cooperative, alert, sloppily dressed and in acute psychic distress due to worrying about her physical condition. She was oriented times three and her recent memory was intact. Dr. Barnett diagnosed adjustment disorder, with mixed depression and anxiety, polysubstance abuse, in remission, and personality disorder, not otherwise specified. Her current GAF was 62. He explained that her limited education would limit the number of available jobs. Dr. Barnett believed that the diagnosis of bipolar disorder was "factitious and secondary to the substance abuse when it was made, because other than mood lability while intoxicated, there are no hypomanic or manic symptoms reported." AR 199.

Plaintiff was caring for five young children and Dr. Barnett believed that there was no psychiatric symptom that would interfere with her ability to do work-related tasks in an eight-hour work situation that was consistent with her education and abilities. She could understand and remember simple or complicated work-related instructions and tasks, could sustain focused attention and concentration long enough to complete routine work-related tasks in a timely and appropriate way and would not need special or additional supervision to do so. She could interact independently, appropriately and effectively with coworkers, supervisors and the public.

She could adapt to changes, hazards or stressors in the work environment.  Dr. Barnett further explained that Plaintiff seemed "quite emotionally immature and her lack of education and work experience will impose significant limitation on the types of jobs" she could perform.  He believed that she would benefit from work experience, however.  AR 199.

On April 28, 2004, State Agency physician Evangeline Murillo, M.D., completed a Psychiatric Review Technique form.  In rating her limitations, she opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace.  AR 200-213.  In a Mental Residual Functional Capacity Assessment, she opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions.  She further opined that Plaintiff could understand and carry out simple tasks.  Plaintiff could interact, adapt and adjust appropriately if performing only simple tasks in the workplace.  AR 229-231.  This opinion was affirmed on November 5, 2004.  AR 231.

On August 19, 2004, Plaintiff saw Vinay K. Buttan, M.D., for an evaluation of her back pain and left arm numbness.  Plaintiff reported a history of low back pain since a fall in 1996. She stated that she worked in the fields picking fruit and that it was difficult to bend.  She also reported a history of numbness, tingling and pain in her left wrist, left hand and left arm off and on for the past one and one-half years.  She also reported a seizure disorder, but stated that she takes Dilantin and that the seizures are well-controlled.  Upon examination, her gait was normal and there was no muscular atrophy or deformity of any joints.  Grip strength was normal and there was no restriction of movement of the left arm, shoulder, wrist or elbow.  She could not bend and touch her toes because she was eight months pregnant, and straight leg raising could not be performed.  He diagnosed chronic low back pain, etiology undetermined, chronic left arm numbness and tingling, etiology undetermined, possibly due to carpal tunnel syndrome, and seizure disorder.  AR 214-215.

Dr. Buttan suggested that after her pregnancy, she should have x-rays of her back and an MRI, as well as nerve conduction studies of the left arm.  Presently, she was disabled because of her pregnancy.  AR 216.

On April 29, 2004, State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment. She had no exertional limitations. Based on her history of seizure disorder, she could never climb ladders, ropes or scaffolds but could frequently climb ramps and stairs. She also had to avoid concentrated exposure to hazards such as machinery and unprotected heights. AR 217-224. This opinion was affirmed on October 29, 2004. AR 224.

Also on October 29, 2004, State Agency physician Ernest Wong, M.D., opined that Plaintiff could perform simple, repetitive tasks. AR 226.

Lumbosacral spine x-rays performed on December 9, 2004, were normal. AR 238.

A CT scan of Plaintiff's brain performed on July 15, 2005, was unremarkable. AR 234.

ALJ's Findings

After reviewing the medical evidence, the ALJ found that Plaintiff's seizures and headaches were severe impairments. Despite this, she retained the residual functional capacity ("RFC") to perform unskilled work at all exertional levels, but could not work at unprotected heights, operate automotive equipment or work around dangerous machinery. Based on this RFC and the finding that Plaintiff's non-exertional limitations did not compromise the occupational base of unskilled work, the ALJ applied Rule 204.00 of the Medical-Vocational Guidelines ("Grids") and found Plaintiff not disabled. AR 15-17.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**<u>REVIEW</u>**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (seizures and headaches) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform unskilled work at all exertional levels, with seizure precautions. AR 15-17.

Plaintiff argues that the ALJ erred in (1) failing to discuss all of Dr. Lessenger's report; (2) failing to find that Plaintiff met or equaled Listing 12.05; (3) failing to use a vocational expert

7

("VE"); (4) failing to find that Plaintiff's borderline intellectual functioning was a severe impairment; and (5) rejecting Plaintiff's mother's testimony.

## DISCUSSION

A.    <u>Dr. Lessenger's Report</u>

Plaintiff first argues that the ALJ "erred in failing to mention" the low IQ scores set forth in Dr. Lessenger's report and her assessment that Plaintiff had difficulties of concentration, persistence and pace consistent with borderline intellectual functioning. Opening Brief, at 6.

Although not entirely clear, it appears that Plaintiff is arguing that her low IQ scores and/or difficulties in concentration, persistence and pace translate into limitations that should have been included in the ALJ's RFC finding. RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

In support of her argument, Plaintiff cites SSR 96-5p, which discusses the treatment of medical source opinions on issues reserved to the Commissioner. Specifically, she cites the portion of the ruling that discusses how an adjudicator should treat a medical source statement about a claimant's RFC: "[a]djudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."

While this is indeed true, it does not support a finding that the ALJ somehow erred in failing to "mention" Plaintiff's IQ scores and borderline intellectual functioning. Plaintiff's IQ scores and borderline intellectual functioning do not provide the ALJ with information as to what Plaintiff is able to do, despite her impairments. In this regard, Dr. Lessenger's report is unclear

as to Plaintiff's abilities. For example, Dr. Lessenger states that her difficulties of concentration, persistence and pace and her ability to understand, carry out and remember simple instructions were "consistent with borderline intellectual functioning." AR 188. The meaning of "consistent with intellectual functioning" is not further explained.

In any event, the ALJ found that Plaintiff could perform simple, repetitive tasks. The evidence relating to Plaintiff's mental impairment includes two consultive examinations and two reviews by State Agency physicians. The ALJ noted that Dr. Barnett believed that Plaintiff could understand and remember simple or complicated work-related instructions and tasks, and had the other requisite work-related abilities. AR 16. *Tonapetyan v. Haler*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion may constitute substantial evidence because it is based on examiner's independent findings and observations). Similarly, State Agency physicians Murillo and Wong concluded that Plaintiff could understand and carry out simple tasks. AR 15, 226, 229-231. In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I).

To the extent that Plaintiff suggests that Dr. Lessenger's findings require a different RFC finding, her argument fails because the ALJ's finding that she could perform simple, repetitive tasks was supported by the evidence, as explained above. To the extent that Plaintiff alleges that the ALJ erred by failing to discuss Dr. Lessenger's opinion in its entirety, her argument also fails. The ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes*, 881 F.2d at 753-754.

Plaintiff's argument is without merit and must be denied.

B.      Listed Impairments

Next, Plaintiff contends that the ALJ erred in failing to find that her impairment (1) meets or equals Listing 12.05(C); and/or (2) equals Listing 12.05.

The listings of impairments describe impairments "that are considered severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. § 416.925(a). Most of these impairments are permanent or expected to result in death. *Id.* For all other impairments, the

evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months. *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry. 20 C.F.R. § 416.920(d).

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1526(a), 416.926(a). Under the law of this circuit, "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

Listing 12.05 provides:

> Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . .
>
> > C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

In arguing that Plaintiff's mental impairment meets or equals Listing 12.05(C), Plaintiff points to (1) the fact that she had special education classes for speech, which evidences a cognitive problem before age 22; (2) her Verbal IQ of 66, Performance IQ of 75 and Full Scale IQ of 67; and (3) the ALJ's finding that her seizures and headaches were severe impairments.

There are numerous problems with Plaintiff's assertion. First, the fact that she received special education classes for speech does not establish "onset of the impairment before age 22." Second, although she may have had IQ scores in the required range, the Court explained above that the ALJ properly found that Plaintiff could perform simple, repetitive tasks. Indeed, Plaintiff

testified that she could adequately care for her six children except when she had headaches. AR 286. Her statements to medical sources support her belief. Plaintiff reported to Dr. Lessenger that she cooks, cleans, does laundry and goes shopping with her mother, and Dr. Lessenger in turn opined that Plaintiff had no restrictions in activities of daily living or in maintaining social functioning. AR 188. Dr. Barnett also opined that because Plaintiff was caring for five young children [at the time], there was no psychiatric symptom that would interfere with her ability to do work-related tasks. AR 199. She could understand and remember simple or complicated work-related instructions and tasks, could sustain focused attention and concentration long enough to complete routine work-related tasks in a timely and appropriate way and would not need special or additional supervision to do so. She could interact independently, appropriately and effectively with coworkers, supervisors and the public. She could adapt to changes, hazards or stressors in the work environment. AR 199.

The ALJ was cognizant of Plaintiff's intellectual abilities, but he was entitled to find that Plaintiff nonetheless retained the RFC to perform *unskilled* work, as the majority of the evidence demonstrates. Pursuant to the regulations, unskilled work is work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

Plaintiff's broader argument that the ALJ should have found that her impairment equaled Listing 12.05 also fails. She cites the Program Operations Manual System ("POMS"), an internal Social Security Administration document. POMS DI 24515.056(D)(1) states that scores in the range of 70 to 75, "in the presences of other physical or mental disorders that impose additional and significant work related limitation of function . . . may support an equivalence determination." This suggestion, however, is not instructive in this case given the overwhelming evidence that Plaintiff can perform unskilled work.

C.  Use of a VE

Plaintiff contends that the ALJ failed to use a VE to analyze the positions available to someone with difficulties with concentration, persistence and pace consistent with borderline

intellectual functioning. However, as the Court explained above, the ALJ did not err by not including this "limitation" in his RFC finding. Accordingly, Plaintiff's argument is moot.

D. <u>Step Two Finding</u>

Next, Plaintiff asserts that the ALJ erred by failing to find that her borderline intellectual functioning was a severe impairment. She cites SSR 85-16, which, according to Plaintiff, "presupposes that an individual with an IQ below 80 with borderline intellectual functioning has a severe impairment." Opening Brief, at 8.

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities. SSR 96-3p.

A "severe" impairment at step two is merely an impairment or combination of impairments that has more than a minimal effect on the claimant's abilities to perform basic work activities. *See* SSR 85-28. The step two analysis is a threshold one which enables the ALJ to deny benefits based on medical considerations alone to those applicants with impairments of such minimal nature that they could never prevent a person from working. *Id.*

Here, the ALJ found that Plaintiff's seizures and headaches were severe impairments. This finding required him to proceed with the sequential evaluation, during which he was required to consider *all* impairments, both severe and non-severe. 20 C.F.R. § 404.1545(e). Therefore, even though the ALJ did not find Plaintiff's borderline intellectual functioning to be a severe impairment, he was still required to consider the resulting limitations, if any, in going

forward with the sequential evaluation and determining Plaintiff's RFC.  As explained above, the ALJ's RFC finding was supported by substantial evidence.

Plaintiff's argument is without merit and must be denied.

E.    Lay Witness Testimony

Finally, Plaintiff argues that the ALJ failed to explain why he rejected the testimony of Ms. Delgado, Plaintiff's mother.

Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness."  *Id.*  The ALJ need not discuss lay witness testimony that pertains to whether or not an impairment exists.  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).  These medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence.  *20 C.F.R. § 404.1513(a).*  However, once an impairment has been established by medical evidence, the extent of the diagnosed impairment may be testified to by the lay witnesses.  *20 C.F.R. § 404.1513(e)*, *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)

Plaintiff points to her mother's testimony that she suffers from migraine headaches twice a week and that she has to come over to take care of Plaintiff's children during those times.  She concedes that the ALJ set forth Ms. Delgado's testimony, but contends that it was an inaccurate summary.

The ALJ stated:

> Sandra Delgado, the claimant's mother, testified that her daughter can take care of her 6 children except when she has headaches 2 to 3 times a week, when she (the mother) takes the children to the park.  She said her daughter had a learning disability as a child, but is a good mother.

AR 16.

Contrary to Plaintiff's claim, the ALJ did not misstate Ms. Delgado's testimony. According to Plaintiff, the ALJ said Ms. Delgado testified that the headaches lasted one hour at a

time, but this statement was made in the ALJ's summary of Plaintiff's testimony, not that of her mother.  AR 16.

Plaintiff also argues that the ALJ rejected Ms. Delgado's testimony because "if someone has migraine headaches 2 days a week lasting 2 to 4 hours each time, that does not allow her to even look after her own children for this time, there is no work that this person could perform."  Opening Brief, at 10.  Plaintiff contends that he erred by not explaining his "rejection."  Ms. Delgado's testimony, however, did not provide the ALJ with specific limitations.  She testified that Plaintiff was unable to care for her children when she had headaches, but did not provide more specific details that would allow the ALJ to translate this into limitations within the work place.  Nor did her testimony provide the ALJ with information that he did not already have.  Based on the ALJ's analysis of the medical evidence relating to her headaches and his analysis of Plaintiff's credibility, findings which she does not challenge, the ALJ found that despite Plaintiff's headaches, she could perform unskilled work.  Any error is therefore harmless.  *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Angie Delgado.

IT IS SO ORDERED.

Dated:   **November 21, 2007**           **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE